# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                    Case No. 09-CR-189

**JAMES FOGLE**
    **Defendant.**

## SENTENCING MEMORANDUM

Milwaukee police recovered a .45 caliber pistol in a shooting, and a trace of the gun revealed the purchaser to be a man named John Lancor. ATF agents interviewed Lancor, and he admitted that he traded the gun for rock cocaine. Lancor stated that defendant James Fogle "middled" the transaction, that he shared some of the cocaine with defendant, but that he and his wife smoked most of it. Agents spoke to defendant, who admitted that he was a felon, that he participated in the trade of the .45 with Lancor, and that he handled the weapon in the process.

The government charged defendant with possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1), he pleaded guilty, and I set the case for sentencing. In imposing sentence, I first calculated the advisory sentencing guideline range, then determined the actual sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

## I. GUIDELINES

The pre-sentence report ("PSR") set a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A) because defendant committed the instant offense subsequent to sustaining a

conviction of a "controlled substance offense";[1] added 4 levels under § 2K2.1(b)(6) because defendant traded the gun for cocaine;[2] then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 21. Coupled with defendant's criminal history category of IV, level 21 produced an imprisonment range of 57-71 months. Neither side objected to these calculations, which I adopted.

## II. SECTION 3553(a)

### A. Sentencing Factors

Section 3553(a) directs a sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

---

[1]Section 2K2.1(a)(4)(A) provides for a base level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."

[2]Section 2K2.1(b)(6) provides: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." See United States v. Olivera, 145 Fed. Appx. 686, 687 (1st Cir. 2005) (applying this enhancement where the defendant traded a gun for drugs).

2

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. While the court must give the guidelines respectful consideration in making this determination, it may not presume that the guideline sentence is the correct one. Nelson v. United States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 (2007). The court is also free to consider whether the guideline exemplifies "the Commission's exercise of its characteristic institutional role," Kimbrough v. United States, 552 U.S. 85, 109 (2007), or reflects an "unsound judgment," Rita, 551 U.S. at 357. Ultimately, the district court must make an independent determination as to an appropriate sentence, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. See Gall v. United States, 552 U.S. 38, 49-50 (2007).

**B. Analysis**

**1. The Offense**

As indicated above, defendant committed a serious offense, transferring a firearm for drugs. Lancor admitted to law enforcement that he traded several other firearms for crack and initially claimed that defendant participated in each of these transactions; however, he

3

subsequently recanted and said defendant helped him with just one other transfer. Defendant denied participating in any other transactions, and the government did not seek to hold him accountable for additional guns.

### 2. The Defendant

At age forty-nine, defendant had a record of scattered contacts with the criminal justice system over the past three decades, with convictions for theft in 1982, drunk driving in 1988, delivery of a controlled substance in 1991, another drunk driving in 2003, and another cocaine delivery case in 2008. He was on probation for the 2008 drug case when he committed the instant offense, leading to revocation and a 1 year prison sentence.

Defendant's background was otherwise positive. The PSR reported, and defendants' siblings confirmed, that defendant experienced abuse at the hands of his step-father growing up, which caused him to run away from home on a few occasions. Defendant dropped out of school after the 10th grade, but nevertheless compiled a decent work record in construction, as set forth in the PSR. His mother and sisters indicated that he developed into a caring person who would help others in any way he could, but perhaps too eager to please. His wife of seven years made a similar statement, indicating that he tried to please everyone and could not say no. She planned to stick with him despite his legal troubles and incarceration.

The PSR also discussed defendant's history of substance abuse, which, as the offense conduct reflected, included use of crack cocaine. Defendant denied a serious problem, but it appeared that he might be minimizing in that regard. He did state that he would benefit from classes to help with criminal thinking patterns. I found drug treatment warranted as well.

4

### 3. The Guidelines and Purposes of Sentencing

The guidelines called for a term of 57-71 months, and the government recommended a within-range sentence of 60 months. I agreed that a period of imprisonment was needed to reflect the seriousness of the offense, promote respect for the law, and deter defendant and other felons from possessing or transferring firearms. Transfers of firearms such as occurred in this case contribute to gun violence on our streets. Not surprisingly, the firearm here ended up being used in a shooting.

However, I concluded that a prison sentence below the guideline range would suffice. First, defendant's base offense level increased from 14 to 20 under U.S.S.G. § 2K2.1(a) due to his 2008 controlled substance conviction, which, according to the facts in the PSR, was a relatively minor offense involving no weapons or violence.[3] A confidential informant working with the police traveled to the home of the drug dealer-target to make a purchase and came upon defendant smoking crack inside the house. Defendant made some calls and helped facilitate a $100 transaction. The record contained no indication that defendant was a dealer of any significance, which the state court essentially confirmed by placing him on probation (with 60 days condition time). Nor did this offense, or any other entry on defendant's record for that matter, lead to the conclusion that defendant posed a greater threat with a gun than any other felon.

Section 2K2.1(a) appears to rely on the theory that the base level should be increased

---

[3] The 1991 drug case, for which defendant also received probation with county jail time, was too old to score criminal history points under U.S.S.G. § 4A1.2(e) and thus did not result in a further increase under U.S.S.G. § 2K2.1(a)(2). See U.S.S.G. § 2K2.1 cmt. n.1 (indicating that the definitions used in U.S.S.G. § 4B1.2 apply); U.S.S.G. § 4B1.2 cmt. n.3 (explaining that the provisions of § 4A1.2 pertaining to the counting of convictions apply in determining whether an offense qualifies as a "crime of violence" or "controlled substance offense").

5

proportionate to the perceived threat the felon poses with a gun. The guideline uses prior convictions for "crimes of violence" and "controlled substance offenses" as indications of an increased threat. Thus, while a felon generally faces a base offense level of 14, § 2K2.1(a)(6), if he has one prior conviction for either a crime of violence or controlled substance offense, the level jumps to 20, § 2K2.1(a)(4)(A); if he has two such convictions, the base level increases to 24, § 2K2.1(a)(2). However, because a controlled substance offense need not involve violence, weapons, or any sort of aggressive behavior, it is unclear why a conviction for such an offense should generally denote a greater threat with a gun. When the Commission established this basic structure in § 2K2.1 in its 1991 amendment to chapter 2, part K, subpart 2, it said only: "This amendment consolidates three firearms guidelines and revises the adjustments and offense levels to more adequately reflect the seriousness of such conduct, including enhancements for defendants previously convicted of felony crimes of violence or controlled substance offenses." United States Sentencing Commission, Guidelines Manual Appendix C – Volume I 239 (1997) (Amendment 374).

Pre-Booker, defendants could not challenge their sentences under § 2K2.1 based on this lack of explanation because the judicial review provisions of the APA do not apply to the sentencing guidelines. See United States v. Wimbush, 103 F.3d 968, 969 (11th Cir. 1997). In the post-Booker era, however, courts are empowered to critically evaluate the guidelines in determining an appropriate sentence. See Lynn Adelman & Jon Deitrich, Improving the Guidelines Through Critical Evaluation: An Important New Role for District Courts, 57 Drake L. Rev. 575, 579-80 (2009). Regarding the firearm guideline, not only did the Commission fail to meaningfully explain the reasons for Amendment 374, research from one of its working groups failed to support the approach of linking sentence length to types of prior convictions.

6

See id. at 587-88. The Commission may have based the Amendment on the fact that Congress, in passing the Armed Career Criminal Act, determined that greater sentences were called for when the defendant had prior convictions for certain crimes, including drug distribution. See id. at 588. Guidelines that simply reflect congressional enactments do not represent an exercise of the Commission's proper institutional role.[4] See Kimbrough, 552 U.S. at 96-97.

Where, as here, the offense level is increased from 14 to 20 or 24 based on minor, prior drug cases, § 2K2.1(a) may overstate the risk that the defendant-felon poses with a gun. See, e.g., United States v. Bullock, No. 08-CR-194, 2009 WL 3667094, at *3 (E.D. Wis. Nov. 2, 2009); United States v. Love, No. 07-CR-198, 2008 WL 2074056, at *3 (E.D. Wis. May 14, 2008). Indeed, the Sentencing Commission has acknowledged, in the context of the career offender guideline, which employs the same definitions as U.S.S.G. § 2K2.1(a), that treating minor drug cases the same as crimes of violence may result in overstatement of the defendant's criminal risk. See U.S. Sentencing Commission, Fifteen Years of Guideline

---

[4] It is also worth noting that, under current law, a felon-in-possession defendant with a record for reckless or negligent use of a firearm will generally receive a lower guideline offense level than a defendant with a prior record for minor, non-violent drug distribution. See United States v. McDonald, 592 F.3d 808, 812 (7th Cir. 2010) (holding that first degree reckless injury is not a crime of violence under § 2K2.1); United States v. High, 576 F.3d 429, 430-31 (7th Cir. 2009) (holding that second degree recklessly endangering safety is not a violent felony); United States v. Smith, 544 F.3d 781, 786 (7th Cir. 2008) (holding that crimes with a mens rea of negligence or recklessness do not qualify as violent felonies); cf. United States v. Woods, 576 F.3d 400, 417 (7th Cir. 2009) (Easterbrook, C.J., dissenting) ("The intentional discharge of a gun is a violent and aggressive act; that the shooter is indifferent to the consequences shows his danger and is a good reason for a recidivist enhancement following his next conviction; it is not a reason to ignore the conduct."). Fortunately, under 18 U.S.C. §§ 3553(a) & 3661, the district court can consider the nature of the defendant's prior conduct in determining the risk he poses with a gun, see High, 576 F.3d at 431, adjusting the sentence up or down based on its conclusions.

7

Sentencing 133-34 (Nov. 2004). I found that level 20 overstated defendant's risk with a gun in this case.[5]

Second, although the transfer aspect of this case represented a legitimate aggravating factor, I noted that this was Lancor's gun, not defendant's, and it appeared that defendant was trying to do Lancor a favor in middling this transaction (and also probably hoping to obtain some crack for personal use for his trouble). He made no money on the deal, and the drugs provided as payment went primarily to Lancor and his wife. I also accepted, as defendant maintained, that this was an isolated incident. He had no prior history with guns, possessing them, selling them, or using them.[6] I also accepted that drug use played a significant role in his conduct.

Defendant suggested that criminal history category IV overstated the severity of his record. As discussed above, the 2008 drug case, which resulted in most of his criminal history points, was relatively minor, but he had other un-scored offenses on his record and, overall, a three decade record of run-ins with law, albeit rather scattered. Category IV and the

---

[5] I also considered the cumulative effect of defendant's 2008 conviction on the guidelines' recommendation. Not only did this conviction increase the base level from 14 to 20, it also produced 6 of his 8 criminal history points (3 for the sentence itself, U.S.S.G. §§ 4A1.1(a) & 4A1.2(k)(1); 2 because defendant was on probation at the time he committed this offense, § 4A1.1(d), and 1 because he committed this offense less than two years after release from the 60 day conditional jail sentence, § 4A1.1(e)). That case also produced the 1 year revocation sentence defendant was serving when he came before me. The 2 points defendant received for being on probation increased the criminal history category from III to IV (and the range from 46-57 to 57-71), yet the guidelines nevertheless recommended that I run the instant sentence consecutive. U.S.S.G. § 5G1.3 cmt. n.3(C). This was simply more than a non-violent, $100 drug case could support.

[6] The government noted that defendant was known in the Fond du Lac, Wisconsin area to "middle" drug deals, which is apparently what prompted Lancor to call him. However, even if defendant was a "go-to guy" to obtain drugs, there is no evidence that he was likewise reputed to deal firearms.

8

reflection of defendant's record in the offense level did overstate his risk with a gun, as discussed, but I could not conclude that the category IV substantially overstated his risk of re-offending.

Defendant suggested a sentence of a year and a day, but I found that insufficient, given the seriousness of the offense and the danger to the community caused by transfers of firearms in this fashion. Rather, under all of the circumstances, I found a sentence of 24 months sufficient but not greater than necessary. This sentence adequately accounted for the mitigating factors discussed above, while still providing sufficient punishment, general deterrence and community protection. This sentence was far longer than any previous sentence defendant served (all sentences prior to the undischarged revocation sentence were county jail terms), so it sufficed to deter defendant from re-offending.

I ordered the instant sentence run concurrently with the balance of defendant's state sentence after revocation. While the guidelines recommend a consecutive term when the undischarged sentence is based on a revocation, see U.S.S.G. § 5G1.3 cmt. n.3(C), the Seventh Circuit has acknowledged that a concurrent term is reasonable where, as here, the revocation is based on the instant offense conduct, see United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). The guidelines also accounted for defendant's probationary status in constructing the range, adding 2 criminal history points under U.S.S.G. § 4A1.1(d), which increased the criminal history category from III to IV. Given the length of the instant sentence, and the timing, this sentence provided significant additional punishment, sufficient to satisfy the factors set forth in 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3 cmt. n.3(A).[7]

---

[7]The state revocation sentence of 1 year (less credit for time served) was imposed in October 2009. Given the timing, the instant sentence, imposed in March 2010, was, in effect,

9

## III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 24 months, followed by three years of supervised release, with a requirement that he participate in drug testing and treatment and the cognitive intervention program. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 8th day of March, 2010.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

---

partially concurrent and resulted in defendant serving a total of approximately 30-33 months related to this conduct. See United States v. Campbell, 667 F. Supp. 2d 993, 996-97 (E.D. Wis. 2009) (explaining that a concurrent sentence begins when it is imposed, and that in order to make a sentence fully concurrent the court must adjust it by the amount of time already served). Employing a base level of 14 rather than 20, the guideline range in this case would have been 30-37 months.

10